UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TECHNOLOGY & SERVICES,
INC.**, *et al.*,

    **Plaintiffs,**

vs.
                                                 Civil Action 2:09-cv-1113
                                                  Magistrate Judge E.A. Preston Deavers

**TACS Automation, LLC,** *et al.*,

    **Defendants.**

**OPINION AND ORDER**

**I.  INTRODUCTION**

This matter is before the Court for consideration of Defendants Logomat Automation Services, Inc. & Peter Krups' Renewed Motion to Dismiss Under Rule 12(b)(2) and (6). Plaintiffs Technology & Services, Inc. and Intellimation, LLC, bring this action for breach of contract, claiming Defendant TACS Automation, LLC (hereinafter "TACS") owes them money for work they performed.  Plaintiff also asserts claims against Defendants Peter Krups (hereinafter "Krups") and Logomat Automation Services, Inc., (hereinafter "Logomat") arising out of their relationship to Defendant TACS.  For the reasons that follow, Defendants Logomat Automation Services, Inc. & Peter Krups' Renewed Motion to Dismiss Under Rule 12(b)(2) and (6) (Doc. 32) is **GRANTED** and Plaintiffs' claims against Defendants Peter Krups and Logomat Automation Services, Inc. are **DISMISSED** without prejudice.

**II. FACTUAL BACKGROUND**

Defendant Logomat is a Kentucky corporation domiciled in Hebron, Kentucky. The President and Director of Logomat, Defendant Krups, is a German citizen and a resident of that country. Defendant TACS is a limited liability company organized in Michigan, with its principle place of business in Michigan. Finally, Defendant Michael Scott (hereinafter "Scott") is the President and sole shareholder of TACS. Defendant Scott is also the Vice President of Marketing for Logomat.

Defendant TACS subcontracted Plaintiffs to provide resources to TSTECH Indiana Seat Assembly System, a company in New Castle, Indiana. The agreement between Plaintiff Technology and Services, Inc. (hereinafter "T&S") and TACS contains a choice of jurisdiction provision. Specifically, the agreement states that "terms and conditions shall be construed according to the law of, and any dispute shall be decided in, the State of Ohio." (Ex. 16–4 at 5.)

In their Complaint, Plaintiffs maintain that Defendant Krups, along with Defendant Scott, "apparently formed [TACS] as a buffer between companies, which they were hiring to perform work for [Logomat] and various vendors." (Compl. ¶ 8.) According to Plaintiffs, Defendants Scott and Krups created TACS to intentionally defraud vendors, leaving them unable to collect money from Logomat. (Compl. ¶¶ 9, 10.) Furthermore, Plaintiffs assert that Krups and Logomat converted money from TACS to which Plaintiffs were entitled for their services. (Compl. ¶ 13.)

On December 16, 2009, Defendants Krups and Logomat (hereinafter collectively "Defendants") filed their original Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (Doc. 10). Defendants contended that the Court lacks personal

jurisdiction over them because the Complaint "fails to allege that either Krups or Logomat transacted any business in Ohio that would subject them to [] jurisdiction." (Doc. 10 at 10.) Defendants also asserted in their Motion to Dismiss that the Complaint does not satisfy the pleading requirements of Rule 12(b)(6) to hold Defendants liable under an alter ego theory. Finally, Defendants submitted that Plaintiffs fail to meet the heightened pleading standards for fraud under Federal Rule of Civil Procedure 9(b).[1]

Plaintiffs opposed the Motion to Dismiss, arguing in part that the Court has personal jurisdiction because Defendants Logomat and Krups are the alter egos of TACS. Plaintiffs maintained, under the alter ego theory, that the jurisdictional agreement between Plaintiff T&S and Defendant TACS, as well as TACS' contacts with Ohio, gives the Court personal jurisdiction over Defendants Krups and Logomat. In their Memorandum in Opposition, as well as the attached affidavits and exhibits, Plaintiffs brought forth facts to support their alter ego theory for personal jurisdiction.

Pursuant to 28 U.S.C. § 636(c), the Court referred this case to the undersigned on April 19, 2010. On June 29, 2010, the Court denied Defendants' original Motion to Dismiss without prejudice. (Doc. 26.) Because the Court found that Plaintiff had produced at least some evidence of affiliation between TACS, Logomat, and Krups, it granted the parties until September 30, 2010 to complete discovery on the issue of personal jurisdiction. (*Id.* at 8–9.) On October 7, 2010, Defendants filed their Renewed Motion to Dismiss. In their Motion, Defendants inform the Court that, in spite of the Court's June 29, 2010 Order, Plaintiffs did not

---

[1] Because the Court finds, for the reasons described below, that the Court lacks personal jurisdiction, it will not consider these other arguments for dismissal.

3

produce any discovery requests upon Krups or Logomat. (Doc. 32 at 2.) Consequently, Defendants renew their Motion to Dismiss in its entirety, and specifically maintain that Plaintiffs have insufficient evidence to establish personal jurisdiction over Krups and Logomat. Plaintiffs did not respond to Defendants' Renewed Motion to Dismiss within the period for filing.[2]

## III. STANDARD OF REVIEW

When confronted with a Rule 12(b)(2) motion, "[t]he plaintiff bears the burden of establishing the existence of jurisdiction." *Estate of Thompson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008) (citing *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006)). When the Court resolves a Rule 12(b)(2) based on "written submission and affidavits . . . rather than resolving the motion after an evidentiary hearing or limited discovery, the burden on the plaintiff is 'relatively slight,' . . . and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prod. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). Under such circumstances "the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh 'the controverting assertions of the party seeking dismissal.'" *Id.* (quoting *Theunissen v. Matthews*, 935 F.2d 1454,1459 (6th Cir. 1991)).

Similarly, even if there has been discovery, in the absence of an evidentiary hearing the Court will generally apply a *prima facie* standard weighing the evidence in the light most favorable to Plaintiffs. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).

---

[2] As the background and legal issues of this case have not changed, and because the parties have not raised new arguments, for efficiency purposes, this Opinion and Order restates significant portion of the Court's June 29, 2010 Order.

The *prima facie* standard "loses some of its significance, however, where . . . the plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction." *Int'l Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997); *see also Dean*, 134 F.3d at 1272 ("[W]e would not use [the *prima facie*] standard if the reason for not having an evidentiary hearing was that there was no 'real dispute' as to the facts or to the extent of discovery.").

Although Plaintiff's *prima facie* burden is relatively slight, the Court must still find that "'[P]laintiff has set forth specific facts that support a finding of jurisdiction in order to deny the motion to dismiss.'" *Palnik v. Westlake Entm't, Inc.*, 344 Fed. Appx. 249, 251 (6th Cir. 2009) (quoting *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006)). Thus, "it remains the plaintiff's burden and the complaint must have 'established with reasonable particularity' those specific facts that support jurisdiction." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Consequently, the rules are designed in part to protect potential defendants from a "plaintiff's bald allegation of jurisdictional facts." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).

## IV. ANALYSIS

When diversity is the basis for jurisdiction, the Court "examine[s] the law of the forum state to determine whether personal jurisdiction exists." *Estate of Thompson*, 545 F.3d at 361. To determine if personal jurisdiction exists, the Court must perform a two-step inquiry analyzing "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." *Brunner*, 441 F.3d at 463.

In this case, Plaintiffs attempt to establish personal jurisdiction over Defendants Logomat and Krups, based on their relationship with Defendant TACS.  Specifically, Plaintiffs maintain that personal jurisdiction exists based on a forum selection clause within the agreement between TACS and T&S.[3]  (*See*  Ex. 16–4 at 5.)  As the United States Court of Appeals for the Sixth Circuit has noted, "[t]he use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court." *Preferred Capital, Inc. v. Assoc. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006).  Under Ohio law, "[a] forum selection clause contained in an agreement in connection with an arm's length commercial transaction between two business entities is valid and enforceable."[4] *Id.* (citing *Kennecorp Mgmt. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 610 N.E.2d 987, 988 (Ohio 1993)).  Nevertheless, because Plaintiffs' jurisdictional agreement was with TACS, for the agreement to apply to either Defendant Logomat or Defendant Krups, they must be the alter ego of TACS.  The United States Court of Appeals for the Sixth Circuit has "endorsed the use of the alter-ego theory to exercise personal jurisdiction." *Estate of Thompson*, 545 F.3d at 362; *see also Flynn v. Greg Anthony Const. Co., Inc.*, 95 Fed. Appx. 726, 734–38 (applying the alter-ego theory for personal jurisdiction outside the parent-subsidiary context).

The Court must look to Ohio law "[i]n applying the alter-ego theory of personal jurisdiction in [a] diversity action." *Estate of Thompson*, 545 F.3d at 362.  Alter-ego liability

---

[3] Plaintiffs also contend that TACS subjects Defendants Logomat and Krups to personal jurisdiction because TACS conducted business in Ohio.  (Doc. 16 at 12.)  This theory of personal jurisdiction also requires Plaintiff to establish an alter-ego relationship, which is described further below.

[4] Defendants Krup and Logomat do not challenge the validity of the jurisdictional provision in their Renewed Motion to Dismiss.

"has historical antecedents in both federal and state law." *Id.* As a general rule, "'[a] corporation is a legal entity, apart from [those] who compose it.'" *Transition Healthcare Assoc., Inc. v. Tri-State Health Investors, LLC*, 306 Fed. Appx. 273, 280 (6th Cir. 2009) (quoting *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Co.*, 67 Ohio St.3d 274, 287 (Ohio 1993)). Nevertheless, "in extraordinary cases . . . courts will pierce the corporate veil and disregard the corporate entity." *Corrigan v. United States Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) (citing *United States v. Bestfoods*, 524 U.S. 51, 62 (1998)).

> Under Ohio Law, the Court may disregard the corporate form when:
>
> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act . . . and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere,* 67 Ohio St.3d at 275. The first element of this test is a formation of "the alter-ego doctrine, which requires that plaintiff[s] 'show that the individual and the corporation are fundamentally indistinguishable.'" *Taylor Steel, Inc.* v. *Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (quoting *Belvedere,* 67 Ohio St.3d at 288).

In analyzing the alter-ego prong, Ohio Courts consider several relevant factors. Such factors include:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

*LeRoux's Billyle Supper Club v. Ma*, 602 N.E.2d 685, 689 (Ohio Ct. App. 1991); *see also Taylor Steel*, 417 F.3d at 605 (applying the same factors). "[B]ecause of the equitable nature of the

7

veil-piercing doctrine, no list of factors can be exclusive or exhaustive." *Carter-Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 749 (6th Cir. 2001) (applying Ohio law).  The United States Court of Appeals for the Sixth Circuit has suggested additional alter-ego factors including sharing employees and officers; engaging in the same business enterprise; sharing an address or phone lines; using the same assets; performing the same tasks; failure to maintain separate books, tax returns and financial statements; and controlling the daily affairs of another corporation.  *Estate of Thompson*, 545 F.3d at 362–63.

Because Plaintiffs did not submit any discovery requests prior to the September 30, 2010 deadline, have failed to adduce any new evidence supporting jurisdiction, and have not responded to Defendants' Renewed Motion, this Court must decide the Motion based on the facts Plaintiffs asserted in their prior pleadings.  In their prior pleadings, Plaintiffs asserted that Defendant Scott sent emails to Plaintiff Intellimation, LLC, using his Logomat email address and containing a Logomat website.  In one of these emails, Scott implies past ownership connections between TACS and Logomat, stating, "TACS no longer has any ownership through Logomat." (Lanning Aff. ¶ 7; Ex. 16–1 at 4.)

Plaintiffs also provided the affidavit of Dan Parish, the Sales Manager of Plaintiff T&S.  According to Parish, in a meeting between Phil Kennedy, the Vice President of TSTech, and Defendant Scott, "Scott indicated that TACS and Logomat were affiliated and Logomat would really be handling [TSTech's] order."  (Parish Aff. ¶ 10.)  Furthermore, Parish states that he received a phone call from Defendant Scott, in which Scott said "that Krups had taken $200,000.00 from TACS and put it in Logomat.  Scott said that Krups was able to take the money because Krups was a part owner of TACS."  (Parish Aff. ¶ 14.)  Lastly, Plaintiffs point to

8

TACS' webpage and a letter from Defendant Scott describing the history of TACS. Specifically, TACS' webpage lists Logomat as one of its partners. (Ex. 16–5.) Furthermore, Defendant Scott's letter, responding to inquiries regarding Logomat and TAC's history, mentions that Logomat owns TACS. (Ex. 16–2 at 1.)

Here, the Court finds that Plaintiffs have failed to establish their burden with regard to personal jurisdiction based on an alter ego theory. Although the relevant *prima facie* standard does not change when the Court grants discovery, the standard loses some significance when a plaintiff has received all the discovery it sought. *See Int'l Tech. Consultants*, 107 F.3d at 391. In this case, because it appears that Plaintiff did not conduct any discovery despite the Court's directions, the Court must assume that Plaintiffs have all the information they seek.

In contending that the Court has jurisdiction, Plaintiffs note that Defendant Scott is an employee of both TACS and Logomat, and that TACS' web-page indicates that the two companies are partners. Furthermore, Plaintiffs, through their affidavits and exhibits, maintain that Defendant Scott used his Logomat email address to handle TACS' business matters; stated to others that Logomat and TACS are affiliated; and stated that Mr. Krups transferred money from TACS to Logomat. To establish that Logomat and Krups are the alter egos of TACS, however, Plaintiffs must set forth specific facts establishing with reasonable particularity that TACS is fundamentally indistinguishable from Logomat and Krups. There must be a level of "control over the corporation" indicating that the "corporation has no separate mind, will, or existence of its own." *Belvedere,* 67 Ohio St.3d at 275.

Although the facts detailed above indicate that the three Defendants are affiliated, and touch on some factors the Court considers in the alter ego determination, Plaintiff has not

provided sufficient detail to justify the Court disregarding the corporate form. *See Microsys Computing, Inc. v. Dynamic Data Sys., LLC*, No. 4:05-CV-2205, 2006 WL 2225821, at *7 (N.D. Ohio Aug. 2, 2006) ("Although several factors weigh in favor of recognizing an alter ego relationship between [the defendants], [the plaintiff] fails to provide sufficient facts to overcome the general presumption that one company operates independently from another.") The bulk of Plaintiffs' evidence, such as the statement of the TACS web-page and Defendant Scott's use of a Logomat email address, does little to establish the level of control necessary for an alter ego finding.

    Plaintiffs' most persuasive evidence is Defendant Scott's statement, as Mr. Parrish recalls in his affidavit, that Krups withdrew funds from TACS to provide to Logomat. (*See* Parish Aff. ¶ 14.) This information provides support for the notion that Defendant TACS and Logomat were commingling funds. Primarily for this reason, the Court allowed Plaintiffs to engage in further discovery in order to uncover more detailed information regarding this transfer of funds as well as the overall relationship between TACS, Logomat, and Krups. Plaintiffs chose not to conduct this discovery. The Court is unwilling to conclude that this isolated statement by itself is enough to establish alter ego liability through the commingling of funds. After all, this evidence is based on a second hand account of Defendant Scott's statements, only addresses a single transfer of funds, and provides little context or detail as to why and how the relevant funds were transferred.[5]

---

[5] In their Memorandum in Opposition, Plaintiffs concede that, far from being conclusive, their evidence "leave unanswered questions about the independence of TACS and Logomat." (Doc. 16 at 8.) Additionally, Plaintiffs specifically requested, in the alternative, limited jurisdictional discovery, stating, "[t]here is no doubt that basic discovery will lead to additional substantial evidence of alter ego and control." (*Id.* at 13.)

Ultimately, without more information, the Court finds that Plaintiffs have failed to overcome, even applying a *prima facie* standard, the general presumption that corporate entities are distinct.  Consequently, the Court finds that it lacks personal jurisdiction to consider Plaintiffs' claims against Defendants Logomat and Krups.

## IV.  CONCLUSION

For the foregoing reasons, Defendants Logomat Automation Services, Inc. & Peter Krups' Renewed Motion to Dismiss Under Rule 12(b)(2) and (6) (Doc. 32) is **GRANTED** and Plaintiffs' claims against Defendants Peter Krups and Logomat Automation Services, Inc. are **DISMISSED** without prejudice for lack of personal jurisdiction.  This case remains pending against Defendants TACS and Scott.  The Court will set a status conference by separate notice.

**IT IS SO ORDERED.**

November 17, 2010                                     /s/ *Elizabeth A. Preston Deavers*
                                                                       Elizabeth A. Preston Deavers
                                                                       United States Magistrate Judge